UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

                                        Chapter 7
150 Fulton Property, Inc.,                    Case No. 15-72755 (AST)

               Debtor.
--------------------------------------------------------X
Richard L. Stern, Chapter 7 Trustee
of the Estate of 150 Fulton Property, Inc.,

               Plaintiff,

      - against -                        Adv. Pro. No. 15-08312 (AST)

Frontseat, LLC and NewBank,

               Defendants.
--------------------------------------------------------X

## <u>POST-TRIAL DECISION AND ORDER</u>

       This adversary proceeding concerns claims by Richard L. Stern, the chapter 7 trustee of the estate of 150 Fulton Property, Inc. (the "Trustee" for "Debtor"), against Frontseat, LLC ("Frontseat") in connection with a tax deed (the "Tax Deed") issued by Nassau County, New York which conveyed certain real property that was previously owned by Debtor to Frontseat.[1]  The two primary issues are: (1) whether Frontseat complied with the Nassau County Administrative Code (the "NCAC") by sending the notice to redeem to Debtor's "last known address" prior to Nassau County issuing the Tax Deed to Frontseat; and (2) whether the Tax Deed that Nassau County issued to Frontseat is avoidable as a fraudulent transfer.  Because the Court has concluded that Frontseat failed to comply with the NCAC, the Tax Deed is void; as such, the Court need not and does not reach the fraudulent transfer issues.

---

[1] While NewBank (the "Bank") is also a defendant, it is present as the mortgagee of Debtor and former lien holder against the real property at issue.

## JURISDICTION AND VENUE

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The following constitutes this Court's findings of fact and conclusions of law made in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule").

### *Procedural History*

On June 26, 2015, Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").[2] [main case dkt item 1]  Previously, Debtor had filed for relief under chapter 11 of the Bankruptcy Code, but this case was dismissed by this Court. [case no. 14-74670, dkt item 37]

On September 24, 2015, the Trustee removed state court case *150 Fulton Property, Inc. v. Frontseat LLC, NewBank and the County of Nassau* from Nassau County Supreme Court to this Court, thereby commencing adversary proceeding number 15-08264.  [main case dkt item 13]  On December 17, 2015, the Trustee commenced this adversary proceeding (collectively the "Two Adversary Proceedings").  [dkt item 1]

---

[2] Docket entries in Debtor's main bankruptcy case, which is case number 15-72755, are cited as "[main case dkt item ___]."  Docket entries in this adversary proceeding, which is case number 15-08312, are cited as "[dkt item ___]." The Joint Pre-Trial Memorandum in this adversary proceeding is cited as "[JPTM ¶ ___]."  The Trustee's exhibits that were admitted at trial are cited as "[Pl. Ex. ___]"; Frontseat's exhibits that were admitted at trial are cited as "[Def. Ex. ___]."  The trial transcript is cited as "[Tr. Tran. Page Number:Line Number(s)]."

On December 17, 2015, the Trustee filed a motion to consolidate the Two Adversary Proceedings (the "Consolidation Motion").    [dkt item 3]    On March 14, 2016, this Court consolidated the Two Adversary Proceedings.  [dkt item 12]

On May 5, 2016, this Court entered an Adversary Pretrial Scheduling Order (the "Scheduling Order"). [dkt item 20]  The Scheduling Order provided, *inter alia*, that the trial would be held on November 8, 2016.  *Id.*  The Scheduling Order required the parties to file direct testimony affidavits and a Joint Pre-Trial Memorandum ("JPTM") and to exchange exhibits in advance of trial.  *Id.*  The Scheduling Order was amended by agreement on several occasions.

On November 4, 2016, the parties filed their direct testimony affidavits and JPTM.  [dkt items 30–33, 35–39]

On April 3, 2017, this Court conducted the trial in this adversary proceeding.

On April 24, 2017, the Trustee filed his Post-Trial Brief and Closing Statement.  [dkt item 57]

On May 15, 2017, Frontseat filed its Post-Trial Brief.  [dkt item 58]

On June 20, 2017, the Trustee filed his Post-Trial Reply Brief.  [dkt item 63]

***Factual Background***[3]

Debtor acquired certain real property located at 150 Fulton Street, Farmingdale, Nassau County, New York 11735 (the "Property") by a deed executed on or about June 10, 2008 (the "Deed").  [JPTM ¶ X(A)(1); Pl. Ex. 32 ¶ 4]  The Deed was recorded on June 18, 2008 in the records of the Nassau County Clerk's Office.  [Def. Ex. I]  The address for Debtor stated in the Deed was 20 Gwynne Road, Melville, New York 11747 (the "Melville Address").  [Def. Ex. I]  At the time

---

[3] The factual background and procedural history are taken from the pleadings, testimony, exhibits, stipulations, and other papers that the parties submitted.

of acquisition, the Property was improved by a gas station, car wash, and retail store.  [Pl. Ex. 32 ¶ 3]

Debtor financed the purchase of the Property through loans from the Bank in the respective sums of $1,800,000 and $200,000, and executed notes in those amounts (the "Loans").  [Pl. Ex. 32 ¶ 4]  The Loans were secured by first and second mortgages against the Property ("First Mortgage" and "Second Mortgage"), an assignment of leases and rents from the Property ("Assignment of Leases"), and a UCC-1 financing statement concerning Debtor's personal property ("UCC-1 Financing Statement").  [Pl. Ex. 32 ¶ 4–8]

Debtor's First Mortgage, Second Mortgage, Assignment of Leases, and UCC-1 Financing Statement were all recorded with the Nassau County Clerk's Office on June 18, 2008.  [Pl. Ex. 1–6]  Each of these recorded documents provides that Debtor's address is 150 Fulton Street, Farmingdale, New York 11735, which is the Property address.  [Pl. Ex. 1–6, 32 ¶ 10–13]

Debtor failed to pay Nassau County its school taxes for 2010-2011 and general property taxes for 2011 ("Unpaid Tax" or "Unpaid Taxes").  [Pl. Ex. 9]  These Unpaid Tax obligations resulted in liens against the Property in favor of Nassau County.  [Pl. Ex. 9]  Subsequently, Nassau County commenced a tax forfeiture proceeding under the NCAC.

On February 22, 2012, Frontseat acquired a tax lien against the Property, which was tax lien certificate number 2011201338, from the Nassau County treasurer for approximately $214,345.99 ("Tax Lien 1").  [JPTM ¶ X(A)(2)]

On May 22, 2013, Debtor's UCC-3 financing statement amendment in favor of the Bank was recorded with the Nassau County Clerk's Office ("UCC-3 Financing Statement Amendment").  [Pl. Ex. 7]  The UCC-3 Financing Statement Amendment provided that as of May

22, 2013, Debtor's address was still listed as being the Property address, i.e., 150 Fulton Street, Farmingdale, New York 11735. [Pl. Ex. 7]

On or about September 10, 2013, Frontseat acquired another tax lien against the Property, which was tax lien certificate number 2011001339, by assignment from the Nassau County treasurer for approximately $188,596.50 ("Tax Lien 2" and together with Tax Lien 1, the "Tax Liens"). [JPTM ¶ X(A)(3)]

On November 22, 2013, Frontseat served the mandatory notice to redeem for both Tax Liens on various persons, including Debtor, but sent the notice to redeem to Debtor only at the Melville Address, not at the Property address (the "First Notice").[4] [JPTM ¶ X(A)(4)] The First Notice advised the recipients of the February 23, 2014 deadline to redeem the Property by paying the Unpaid Taxes, after which the tax lien holder could apply for a tax deed or begin a foreclosure proceeding in court. [Pl. Ex. 9]

Also on November 22, 2013, Frontseat agent Manouchehr Davoudzadeh executed the affidavit of service of the notice to redeem ("First Notice Affidavit"), which was submitted to the Nassau County treasurer, affirming that:

> The last known address of the person [Debtor] served was determined by deponent by search of the records in the County Clerk's office, County Treasurer's office and the Surrogate's Office of the County of Nassau and Tax Receiver's office in which Town, City and/or Village the property is located.

[Pl. Ex. 9] Frontseat representative Samuel Habibian testified at his deposition that he reviewed and notarized the First Notice Affidavit, and confirmed the accuracy of its contents. [Pl. Ex. 33, pp. 35:5–25, 36:2–25, 37:2–11, 47:13–25]

---

[4] Frontseat sent the First Notice to the following additional people and entities at the following addresses: Signarama at 150 Fulton Street, Suite 2, Farmingdale, New York; current tenant at 150 Fulton Street, Farmingdale, New York; current tenant at 166 Fulton Street, Farmingdale, New York; and the Bank at 146-01 Northern Boulevard, Flushing, New York 11354. [JPTM ¶ X(A)(4)].

Mr. Habibian testified at his deposition that before sending the First Notice, Frontseat found and reviewed the records in connection with the Property at the Nassau County Clerk's Office.  Specifically, Mr. Habibian testified that Frontseat found and reviewed the First Mortgage, Second Mortgage, Assignment of Leases, UCC-1 Financing Statement, and UCC-3 Financing Statement Amendment, all of which provided that Debtor's address was the Property address.  [Pl. Ex. 33, pp. 50:7–11, 91:8–23, 92:7–25, 93:2–24, 98:21–25, 99:2–25, 100:2–25, 101:2–11, 103:14– 25, 104:2–25, 105:2–25, 106:2–7, 109:21–25, 110:2–25, 111:2–25, 112:2–25, 113:2–3, 113:21– 25, 114:2–16, 115:24–25, 116:2–4]  Mr. Habibian also testified that he "believe[d] the property [address] was also listed" in addition to the Melville Address.  [Pl. Ex. 33, pp. 48:18–19]

Moreover, Mr. Habibian testified in his direct testimony affidavit that Debtor may have still been in possession of the Property at the time Frontseat served the First Notice, [Def. Ex. EE ¶ 11], and did not dispute on cross-examination at trial that during that same time period, Debtor may have been visiting the Property.  [Tr. Tran. 139:2–6]

It is undisputed that at the time Frontseat served the First Notice and provided the Nassau County treasurer with the First Notice Affidavit, the Nassau County Clerk's Office records contained the First Mortgage, Second Mortgage, Assignment of Leases, UCC-1 Financing Statement, and UCC-3 Financing Statement Amendment, all of which listed Debtor's address as the Property address and all of which were recorded later than the Deed.  [Pl. Ex. 1–6, 32 ¶ 10– 13]

On December 11, 2013, Frontseat received back the First Notice that it had sent to Debtor at the Melville Address stamped "unclaimed."  [JPTM ¶ X(A)(5)]

On December 13, 2013, Frontseat served a supplemental notice to redeem on various persons (the "Second Notice"), but did not send the Second Notice to Debtor.[5]

On March 21, 2014, Frontseat submitted a tax deed application to the Nassau County treasurer for the Property.  [JPTM ¶ X(A)(8)]

On May 1, 2014, the Nassau County treasurer issued a Tax Deed to Frontseat for the Property.  [JPTM ¶ X(A)(9)]

It is undisputed that Frontseat never sent the mandatory notice to redeem to Debtor at the Property address.

## **DISCUSSION**

The NCAC establishes an administrative structure under which a tax lien holder may acquire title to real property following a property owner's failure to pay property taxes; one critical requirement for a tax lien holder to obtain a tax deed is that the tax lien holder serve a notice to redeem on the property owner and provide the Nassau County treasurer with proof of service of the notice to redeem.  NCAC § 5-51.0(b)–(c).  The tax lien holder must serve the notice to redeem "by certified mail, postage paid, return receipt requested, showing [the] address where delivered, and addressed to [the property owner]'s last known address."  NCAC § 5-51.0(c).[6]

---

[5] Frontseat sent the Second Notice to the following people and entities at the following addresses: Edward G. McCabe at 333 Earle Ovington Boulevard, Suite 601, Uniondale, New York 11553; Village of Farmingdale Office of the Village Clerk at 361 Main Street, Farmingdale, New York; 611 MNR Corp. at 175 East Shore Road, Suite 270, Great Neck, New York; and DMA Lynnwood, LLC at P.O. Box 250, Cold Spring Harbor, New York.  [JPTM ¶ X(A)(6)]

[6] The full text of NCAC § 5-51.0(c) is as follows:

> A holder of a tax lien shall serve notice on the owner in fee as appearing of record for said premises classified as class one or of a residential condominium classified as class two by personal service, as defined in the Civil Practice Law and Rules of the State of New York when said owner is a resident of Nassau County; notice shall be served on a non-resident owner as appearing of record of class one lot or parcel and/or of a class two residential condominium and owners appearing of record of other lots and parcels and other parties in interest as specified in subdivision a of section 5-51.0 of this code by certified mail, postage paid, return receipt requested, showing address where delivered, and addressed to such person's last known address. The receipt of the postmaster for such certified mail and the return card by the post office and the affidavit of the person mailing it, setting forth the means by which the last known address was ascertained, shall be sufficient evidence of the

The purpose of the notice to redeem is to provide notice to the property owner that if the property owner does not exercise its right to redeem the property by paying the property taxes, then the tax lien holder can seek to obtain a tax deed from the Nassau County treasurer.  *See Kese Indus. v. Roslyn Torah Found.*, 940 N.E.2d 530, 531 (N.Y. 2010); *see also R.A. Hendrickson Real Estate, Inc. v. Weisman* (*In re R.A. Hendrickson Real Estate, Inc.*), 395 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) (citing NCAC § 5-51.0) ("The notice informs the recipient that unless he redeems the lien, the lienholder may apply for a deed of conveyance . . . .").

If the property owner does not satisfy the tax lien within three months of when it was served with the notice to redeem, then "the [tax lien holder] may either commence a foreclosure proceeding to obtain title, or apply to the [Nassau] County Treasurer for a [tax] deed." *Hendrickson*, 395 B.R. at 573 (citing NCAC § 5–53.0).  If the tax lien holder chooses to apply for a tax deed, then the Nassau County treasurer can execute the tax deed once: (1) the tax lien holder performs "the condition which he is required to perform pursuant to this article"; (2) the tax lien holder surrenders the certificate of sale of the tax lien; (3) the tax lien holder pays all outstanding prior tax liens that Nassau County held for the property; and (4) it receives proof of service of the notice to redeem.  NCAC § 5-53.0(1)–(4).  The tax lien holder must apply to the Nassau County treasurer for the deed "within [15] years of the first day on which a notice to redeem pursuant to this section could first be served."  NCAC § 5-51.0(h).

While the NCAC does not define what a property owner's "last known address" is for service of the notice to redeem, case law interpreting NCAC § 5-51.0(c) generally defines it as the

---

service of the notice. Where certified mail is not available registered mail may be substituted for service of notice.
(Amended by Local Law No. 13-1986, in effect November 17, 1986; amended by Local Law No. 21-1990, effective November 26, 1990.)

property owner's most recent address listed on the records of the Nassau County Clerk's Office, Nassau County Treasurer's Office, Nassau County Surrogate's Office, and the Tax Receiver's Office for the town, city, and/or village that the property is located in (collectively, the "County Record Sources").  This construction of the phrase "last known address" is consistent with NCAC § 5-51.0(a), which requires the tax lien holder to determine who the property owner of the subject property is by looking at the records kept by these same County Record Sources.  NCAC § 5-51.0(a).  With respect to proof of service, the tax lien holder must execute and deliver to the Nassau County treasurer an affidavit that contains, *inter alia*, the means by which the last known address was ascertained.  NCAC § 5-51.0(c).[7]

As Judge Grossman of this Court has stated, "the [property] owner's title may not be divested unless statutory requirements [of the NCAC] are strictly observed." *Hendrickson*, 395 B.R. at 573 (quoting *Arbor Secured Funding, Inc. v. Just Assets N.Y. 1*, 2006 N.Y. Slip Op 50112U (Sup. Ct. Jan. 1, 2006)); *see also Lichtenstein v. Rocchio*, 315 N.Y.S.2d 434 (Sup. Ct. 1970) (canceling tax deed because tax lien holder failed to strictly comply with NCAC notice provision, where tax lien holder failed to request that post office show the address where registered notice to redeem was delivered).

The New York Court of Appeals has held that "[s]trict compliance with the proof of notice provision [is] required before a tax deed could be executed." *Weinstein v. All State Credit Corp.*, 291 N.E.2d 725, 726 (N.Y. 1972).  The *Weinstein* court, in addressing a dispute that arose after the NCAC had been amended, stated:

---

[7] NCAC § 5-51.0(c) provides, "The receipt of the postmaster for such certified mail and the return card by the post office and the affidavit of the person mailing it, setting forth the means by which the last known address was ascertained, shall be sufficient evidence of the service of the notice."  In addition, NCAC § 5-51.0(e) provides, "The County Treasurer, upon receiving a copy of such notice, together with an affidavit by the holder or his attorney or agent that service has been properly made pursuant to this section and stating the expense incurred for searches and serving the notice, shall make an appointee notation of such service and expense in his records."

> The proof of notice of redemption did not comply with the amended section 5—51.0, subdivision c of the Nassau County Administrative Code in that it did not disclose the 'means by which the last known address was ascertained.' Strict compliance with the proof of notice provision was required before the tax deed could be executed (Nassau County Administrative Code, sec. 5—53.0, subd. 4). It makes no difference that the parties and even the courts below were understandably not aware of the amendment to the applicable statute. All were charged with the law extant.

*Id.* The *Weinstein* court then cited the following cases that required strict compliance with similar statutes: (1) *Clason v. Baldwin*, 46 N.E. 322 (N.Y. 1897); and (2) *Matter of Vivenzio v. City of Utica*, 296 N.Y.S.2d 419 (Sup. Ct. 1969), *aff'd*, 306 N.Y.S.2d 671 (4th Dep't 1969). *Id.*

The court in *Eisenbaum v. Carreau* stated that the NCAC required the tax lien holder to search the County Record Sources to ascertain the property owner's last known address. 238 N.Y.S.2d 94, 96 (Sup. Ct. 1962). In *Eisenbaum*, the tax lien holder sent the notice to redeem to the property owners at their address listed on the deed recorded in 1955; the court held this was defective notice because it was not mailed to the property owners' last known address of record with the County Record Sources as of 1957. *Id.* at 95, 96. The court stated that if the tax lien holder had searched the County Record Sources, she would have found the later address. *Id.* at 96 (citing NCAC § 5-51.0).

Similarly, in *Schwartz v. Bankers Trust Co.*, the court held that the notice to redeem complied with NCAC § 5-51.0 where the tax lien holder mailed the notice to redeem to the property owner by registered mail, return receipt requested, at the address appearing on the tax receiver's records, which was the same address of record with the Nassau County clerk based on the deed by which the property owner acquired title. 281 N.Y.S.2d 193, 194 (2d Dep't 1967). Although the property owner did not accept delivery of the notice to redeem, the court stated that "[i]t is of no consequence that the party to whom notice is given does not actually reside at the address to which the notice is mailed, as long as the address is obtained from a search of the records on file in the

several offices stated in the Nassau County Administrative Code and there is no claim or showing that plaintiff had actual knowledge of another address for such party." *Id.* at 194–95.

The parties did not cite a case identical to the facts here, where a tax lien holder sent the notice to redeem to the address of record with the New York State Department of State, but not to the last known address of record with the County Record Sources. However, because Frontseat failed to strictly comply with the NCAC, Debtor cannot be divested of its title to the Property.

Notwithstanding that Frontseat did not send the First Notice to Debtor at its last known address of record with the County Record Sources, Frontseat asserts the following arguments in its defense. First, Frontseat argues that it gave Debtor constitutionally adequate notice of its right to redeem the Property for due process purposes by going outside the County Record Sources. Specifically, Frontseat argues that it looked for Debtor's address of record with the New York State Department of State, which listed the Melville Address, and sent the First Notice to that address, either because it was Debtor's principal place of business, it was where Debtor could be served with process, or because Frontseat believed Debtor was no longer in physical use or possession of the Property. Second, Frontseat argues that due process was satisfied because although the First Notice sent by certified mail to Debtor at the Melville Address was returned "unclaimed," the copy sent by regular mail was not returned. However, Frontseat's service of the notice to redeem was inadequate.

While certain New York state court cases applying the NCAC notice to redeem requirement discuss the issue in terms of due process, the majority of cases agree with the New York Court of Appeals in *Weinstein*, and hold that the tax lien holder must strictly comply with the NCAC before a property owner forfeits its property ownership, and that such strict compliance satisfies due process. For example, in *Zamor v. L & L Assocs. Holding Corp.*, the court determined

that the tax lien holder on commercial property satisfied the NCAC § 5-51.0 notice requirements and the property owner's due process rights by sending the notice to redeem by certified mail, return receipt requested to the property owner at the address of record with the Nassau County treasurer's office and tax receiver's office, which was the address of the subject property, and to the "Tenants in Possession" at the subject property.  926 N.Y.S.2d 625, 627–28 (2d Dep't 2011). While the two notices to redeem sent to the subject property "were returned unclaimed after several attempts at delivery," the Nassau County treasurer nevertheless properly conveyed the subject property by deed to the tax lien holder.  *Id.*

Both sides refer to *149 Glen St. Corp. v. Jefferson* and *Roslyn Jane Holdings, LLC v. Jefferson*.  *149 Glen St.* held that more than strict compliance was required and due process was not satisfied where the tax lien holder sent a notice to redeem which was returned unclaimed, and knew of but failed to utilize an address other than the address to which it sent the notice to redeem. The *149 Glen St.* court casts the issue as "[i]n making a determination as to whether notice is 'reasonably calculated,' the unique information about an intended recipient must be considered, 'regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case.'"  33 N.Y.S.3d 360, 361 (2d Dep't 2016) (quoting *Jones v. Flowers*, 547 U.S. 220, 221 (2006).  However, that court did not explicitly state whether the address that the tax lien holder sent the notice to redeem to was in fact the last known address of record with the County Record Sources, but rather that the notice was sent "in an attempt to comply with the [NCAC] notice provisions."  *Id.* at 361–62.  The court then stated "that after that mailing was returned [] 'unclaimed,'" the tax lien holder failed to send the notice to redeem to the property owner's CEO's address, "despite the fact that [the tax lien holder] had notice of this address" through its research on the New York State Department of State website, and that "an entity that 'actually desired to

inform' the [property owner] of its right to redeem the property would have sent notice to this additional address after the first certified mailing was returned." *Id.* at 362.

In *Roslyn*, the tax lien holder on commercial property was found to satisfy due process by sending the notices to redeem to the property owner by certified mail, return receipt requested, and regular, first class mail at the address of record with the Nassau County treasurer's office. 42 N.Y.S.3d 61, 62 (2d Dep't 2016). It appears from that opinion that the address used for the notice to redeem was the property address of record with the County Record Sources:

> The respondent L & L Associates Holding Corp. (hereinafter L & L), was the holder of a tax lien purchased at public auction from the Nassau County Treasurer. The record in the companion case (which involved the same parties and was pending before the same judge) indicates that notices of the tax lien sale dated October 20, 2010, and January 19, 2011, respectively, were sent by the County of Nassau to Roslyn Jane Holdings, LLC (hereinafter Roslyn Jane), "or current owner," at 71 Jane Street, Roslyn Heights, NY, 11577.
>
> In January 2013, L & L served notices to redeem on Roslyn Jane at the same address.

*Id.* at 62. The court held that the NCAC was satisfied because even the certified mailing was returned unclaimed, the regular mail was not returned. *Id.* at 63.

Frontseat is correct that certain cases such as *149 Glen St.* and *Roslyn*, in line with prior decisions of the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, have cast the notice issue in a broader due process sense, providing that the notice to redeem must be sent in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *149 Glen St. Corp.*, 33 N.Y.S.3d at 361; *see also Orra Realty Corp. v. Gillen*, 847 N.Y.S.2d 602 (2d Dep't 2007); *89 Pine Hollow Rd. Realty Corp. v. American Tax Fund, Foothill*, 840 N.Y.S.2d 85 (2d Dep't 2007).

13

However, this Court's reading of New York authority, including the New York Court of Appeals in *Weinstein*, and Judge Grossman's opinion in *Hendrickson*, is that they stand for the proposition that due process does not require actual receipt of the notice to redeem before a property owner may lose title to its property, so long as the returned notice to redeem was sent to the last known address of record with the County Record Sources.  Thus, due process under the NCAC is satisfied by fidelity to the notice provisions of NCAC § 5-51.0(c), which only requires:

> . . . [that the notice to redeem be sent by] certified mail, postage paid, return receipt requested, showing address where delivered, and addressed to such person's last known address. The receipt of the postmaster for such certified mail and the return card by the post office and the affidavit of the person mailing it, setting forth the means by which the last known address was ascertained, shall be sufficient evidence of the service of the notice. Where certified mail is not available registered mail may be substituted for service of notice.

NCAC § 5-51.0(c).  There is no requirement in the relevant NCAC notice provision of a separate regular mail copy being sent and proven to have not been returned undelivered.  Frontseat failed to send the notice to redeem to Debtor's last known address of record in the County Record Sources pursuant to NCAC § 5-51.0(c).

Frontseat also claims in its Post-Trial Brief that it reviewed the records of the tax receiver, New York State Department of State, and "other places" for Debtor's address, and that the tax receiver and New York State Department of State records listed the Melville Address as Debtor's "chosen address for the service of process."  [dkt item 58]  However, there is no evidence in the trial record of a last known address found in the tax receiver's office; for example, neither side submitted a tax bill showing the mailing address Nassau County or the tax receiver used to send tax statements to Debtor.  There is no evidence in the record of any address for Debtor in any of the County Record Sources other than what can be readily found in the Nassau County clerk's office, and the last several recorded documents all list the Property address as the address for

14

Debtor; as noted, the Deed using the Melville Address is chronologically years before multiple records were recorded using the Property address. Thus, the last known address, within the meaning of the NCAC, is as found in the May 22, 2013 UCC-3 Financing Statement Amendment, which was recorded several months before Frontseat sent the First Notice, and lists the Property address as Debtor's address. Because Frontseat failed to send the notice to redeem to Debtor's last known address as found in the County Record Sources pursuant to NCAC § 5-51.0(c), the Tax Deed is void.

### *This Court Will Not Consider the Timeliness Issue Raised Post-Trial by the Trustee*

In his Post-Trial Brief, the Trustee for the first time claims that Frontseat did not comply with NCAC § 5-51.0(b) because Frontseat failed to send the First Notice "after the expiration of twenty-one months from the date of the sale of the tax lien" (the "Timeliness Issue"). [dkt item 57] The Trustee did not specifically plead this claim in either of the Two Adversary Proceedings, and the parties did not raise the Timeliness Issue in the JPTM. As such, this issue has been waived. *See Marine Midland Bank, N.A. v. U.S.*, 11 F.3d 1119, 1123 (2d Cir. 1993).

In addition, when the Trustee filed his Consolidation Motion in the Two Adversary Proceedings, he stated that the following issues were the ones in controversy:

> Frontseat claims that it served notices to redeem to all interested parties, including the Debtor, as required under the Nassau Administrative Code.

> Frontseat further claims that the Debtor failed to redeem timely the tax liens sold on February 21, 2012.

> Frontseat allegedly served a Notice to Redeem upon the Debtor by certified mail, return receipt requested, at 20 Gwynne Road, Melville, New York 11747 on November 22, 2013. This notice was returned "unclaimed" after November 22, 2013, but before December 13, 2013.

> Frontseat did not serve another Notice to Redeem upon the Debtor.

> The records of the Office of the Clerk of the County of Nassau listed the Debtor's address as 150 Fulton Street, Farmingdale, New York 11735.

The Debtor was not served with a Notice to Redeem at 150 Fulton Street, Farmingdale, New York 11735, the Subject Property.

. . . .

The search allegedly conducted by Frontseat under to [sic] the Nassau County Administrative Code violated the Administrative Code and violated the Debtor's rights, because the Debtor had the Subject Address listed as its address in the Office of the Clerk of the County of Nassau.

. . . .

The complaints differ in the relief sought. The State Court complaint seeks to unwind the transfer based upon a violation of rules governing service. The Bankruptcy Court complaint seeks equitable subordination of Frontseat's claim based upon that violation of the rules. In addition, the Bankruptcy Court Complaint seeks fraudulent conveyance relief and denial of Frontseat's claim in bankruptcy unless it compensates the Debtor's estate for the fraudulent conveyance.

[dkt item 3]  None of these address the Timeliness Issue.

## CONCLUSION

Because Frontseat failed to send the notice to redeem to Debtor's last known address of record in the County Record Sources pursuant to NCAC § 5-51.0(c), the Tax Deed that Nassau County issued to Frontseat for the Property is void.  The Court therefore need not and will not reach the fraudulent transfer issues.  Accordingly, it is hereby

**ORDERED** that the Tax Deed is void; and it is further

**ORDERED** that costs of court shall be taxed against Frontseat in accordance with Bankruptcy Rule 7054; and it is further

**ORDERED** that the Trustee shall submit a judgment in conformity herewith within 14 days of this Post-Trial Decision and Order being entered.



**Dated: February 14, 2018**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**

16